# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

**STANDARD CONTRACTORS, INC.,**

    Plaintiff,

v.

**NATIONAL TRUST INSURANCE COMPANY**,

    Defendant.

Civil Action No. 7:14-CV-66 (HL)

## ORDER

This case is before the Court on Defendant's Motion to Dismiss. (Doc. 3). For the reasons discussed below, the Court grants Defendant's motion.

### I.   FACTS

On January 30, 2013, Plaintiff Standard Contractors, Inc. ("SCI") entered into a subcontract with Marteen, Inc., a general contractor hired to renovate the indoor pool facility at Moody Air Force Base. (Doc. 1-1 ¶ 6). SCI agreed to provide all labor, equipment and materials required for the project. (Id.) SCI then subcontracted the design and installation of the pool to Aqua Designs Systems, Inc. ("Aqua Designs"). (Id. at ¶¶ 7-8). SCI and Aqua Designs finalized the pool renovation project on December 21, 2012. (Id. at ¶ 9).

SCI received notification on March 31, 2013 that there was a significant drop in the water level of the pool. (Id. at ¶ 21). Upon investigation, SCI

discovered extensive damage to the pool, the pool's recirculation system, and the concrete decking on both sides of the pool. (Id. at ¶ 22). According to SCI, Aqua Designs omitted numerous parts that were vital to the recirculation system and specifically required by the design plan. (Id. at ¶¶ 10-12). SCI further alleges that Aqua Designs installed an oversized impeller that caused excessive water pressure in the recirculation system. (Id. at ¶¶ 13-15). The combination of the missing parts and the oversized impeller compromised the piping system and lead to the demise of the pool project. (Id. at ¶¶ 16-20).

SCI submitted a claim to Defendant National Trust Insurance Company ("National Trust") on April 9, 2013, seeking coverage for the Loss under a commercial general liability ("CGL") policy. (Id. at ¶ 23, 25). National Trust acknowledged receipt of the claim on April 11, 2013. (Id. ¶ 26; Doc. 1-2, Ex. C). In its preliminary assessment of the claim, National Trust indicated that there may not be coverage under the CGL policy but agreed to investigate the matter subject to a reservation of rights. (Id.). On May 9, 2013, National Trust, citing various provisions contained in the insurance policy, confirmed that there was no coverage of the claim. (Id. at ¶ 27; Doc. 1-1, Ex. D). The insurance company again asserted a reservation of rights and instructed SCI that if "any of the facts change, or any new allegations are raised, or if a lawsuit is filed, you should immediately notify us and we will further evaluate the new information." (Doc. 1-2, Ex. D). By a letter dated June 21, 2013, SCI contested the denial of coverage,

made a demand for coverage, and placed National Trust on notice of a potential bad faith claim under O.C.G.A. § 33-4-6. (Doc. 1-1, ¶¶28-29; Doc. 1-2, Ex. E).

Fearing exposure to contract and tort claims by Marteen, Inc. and the United States Air Force, SCI entered into a mitigation agreement with Aqua Designs on July 2, 2013 to repair the damage to the pool and the surrounding areas. (Doc. 1-1, ¶¶ 30, 33). SCI and National Trust continued to communicate about the disputed claim, but National Trust never changed its position regarding coverage of the alleged loss. (Id. at ¶¶ 35-39; Doc. 1-2, Ex. F-G). SCI completed the repair project in late November 2013. (Id. at ¶ 40).

SCI sent another demand for coverage to National Trust on December 11, 2013, demanding $431,507.90 for the cost of repairing the pool. (Id. at ¶ 41; Doc. 1-2, Ex. H). National Trust did not accept the demand. SCI thereafter filed a complaint against National Trust in the State Court of Lowndes County, Georgia, alleging breach of contract and bad faith failure to pay pursuant to O.C.G.A. § 33-4-6.[1] National Trust removed the case to this Court and now moves to dismiss SCI's Complaint on grounds that SCI fails to state a claim against National Trust for which relief can be granted.

---

[1] SCI named Aqua Designs in the initial lawsuit. The parties later collectively consented to dismissing Aqua Designs without prejudice because of a binding arbitration agreement between SCI and Aqua Designs.

## II. MOTION TO DISMISS STANDARD

When examining a motion to dismiss, the court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271,1273 n. 1 (11th Cir. 1999). The court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 992 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682 (1946)). Accordingly, to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Georgia law recognizes that "'[a]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract.'" Taylor Morrison Servs., Inc. v. HDI-Gerling America Ins. Co., 293 Ga. 456, 459 (2013) (quoting Hunnicut v. Southern Farm Bureau Life Ins. Co., 256 Ga. 611, 612 (1987)). Contract disputes are well suited for adjudication by the court "'because construction of a contract is ordinarily a matter of law.'" Maxum Indemnity Co. v. Jimenez, 318 Ga. App. 669 (2012) (quoting Nationwide Mut. Fire Ins. Co. v.

4

Somers, 264 Ga. App. 421, 423 (2003)). The parties do not dispute the facts of the underlying insurance claim at issue in this case. Rather, the question is whether or not the CGL policy covers the claim.

### III. ANALYSIS

National Trust contends that SCI's breach of contract claim fails as a matter of law under the express terms of the CGL policy. According to National Trust, SCI has not plead any facts establishing that National Trust has a duty to defend or to indemnify SCI for the loss SCI sustained as a result of Aqua Designs' faulty workmanship. SCI counters with the argument that National Trust's denial of coverage constitutes an anticipatory breach of the contract. Further, SCI argues that National Trust's imposition of a precondition of a judicial finding of liability prior to the attachment of the duty to indemnify is contrary to law and breaches of the implied covenant of good faith and fair dealing. Upon careful review of the Complaint and the insurance policy, the Court finds that the insurance agreement between the parties unambiguously disallows coverage for the loss sustained by SCI as a result of Aqua Designs' alleged negligence. SCI has alleged no facts to establish the right to relief for a breach of contract.

A.  **Breach of Contract**

The contract at issue here is a standard CGL policy.[2] GCL policies are commonly purchased by contractors like SCI to insure against "the 'potentially limitless' risk that the contractors' work, once relinquished or completed, will cause bodily injury or damage to property for which the contractor may be found liable." Mass. Bay Ins. Co. v. Sunbelt Directional Drilling, Inc., 2008 U.S. Dist. LEXIS 20066, at *9 (N.D. Ga. Feb. 14, 2008) (citing McDonald Constr. Co., Inc. v. Bituminous Cas. Corp., 279 Ga. App. 757, 761 (2006)). A policy of this sort "is not intended to protect a contractor from economic loss when a product or completed work is not to the customer's satisfaction or when a contractor must repair or replace an element of his own work which has been damaged in order to comply with his contractual obligations to the customer." Id. at *9-10. In other words, a CGL policy only covers a loss where liability arises as a result of a tort, not breach of contract. Id. at *10.

The contract entered into by SCI and National Trust contains the following language under the Insuring Agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any

---

[2] A "standard" CGL policy "is one written on a standard policy form developed by the Insurance Services Office (ISO), an association of property and casualty insurers." See Taylor Morrison Services, Inc., 293 Ga. 456, 457 n.1 (2013). The policy in this case was written on standard ISO form CG 00 01 12 07.

> "suit" seeking those damages. . . . We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Doc. 1-1, p. 27).

In its motion to dismiss, National Trust breaks down its contractual duties under this provision into two parts, (1) the duty to defend SCI against a suit seeking covered damages; and (2) the duty to indemnify SCI for damages SCI is legally obligated to pay. (Doc. 3-1, p. 4). The duty to defend and the duty to indemnify are separate and independent obligations and have different triggering mechanisms. See Utility Service Co., Inc. v. St. Paul Travelers Ins. Co., 2007 U.S. Dist. LEXIS 4634, at *6 (M.D. Ga. Jan. 22, 2007); Somers, 264 Ga. App. at 423. The duty to defend, which requires the insurer to provide the insured with an adequate defense against any covered claim, arises upon the filing of a claim. Utility Service Co., Inc., 2007 U.S. Dist. LEXIS 4634, at *4. The duty to indemnify, in contrast, "is triggered only when the insured becomes obligated to pay damages covered by the policy; in other words, when there is an entry of final judgment, settlement, or a final resolution of the underlying claims by some other means." Id. (citing Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

**1.     Duty to Defend**

According to the terms of the CGL policy here, the duty to defend arises upon the filing of a "suit" seeking damages for alleged "property damage" for which the policy provides coverage. (Doc. 1-1, p. 41). "Suit" is defined as "a civil proceeding" and includes arbitration proceedings and other alternative dispute resolution proceedings.

SCI has at no point alleged that either Marteen, Inc. or Moody Air Force Base ever filed suit or even threatened to file suit for alleged damage to the pool. SCI concedes this point. However, SCI counters by attempting to argue that National Trust's initial denial of the insurance claim was an anticipatory repudiation of National Trust's duty to provide a defense. SCI states that it "could hardly be expected to allow the claims of Marteen, Inc. and Moody Air Force Base to ripen into lawsuits in the hopes that [National Trust] would change course and tender coverage." (Doc. 5).

SCI's strained argument is unconvincing and does not remedy the absence of factual allegations that SCI was facing legal action and that National Trust breached its duty to defend SCI. Under Georgia law, "anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract." Layer v. Clipper Petroleum, Inc., 319 Ga. App. 410, 416 (2012) (citation and punctuation omitted). SCI claims that National Trust

anticipatorily breached the contract by denying coverage and refusing to reimburse SCI for the loss associated with the damage to the pool project. SCI's argument conflates the duty to defend with the duty to indemnify. While the facts as presented to the Court do show that National Trust declined to provide indemnification for the claim, the May 9, 2013 denial letter relied upon by SCI in support of this argument very clearly provides, "If any of the facts change, or any new allegations are raised, or if a lawsuit is filed, you should immediately notify us and we will further evaluate this claim." (Doc. 1-2, p. 43).

SCI never notified National Trust of the initiation of any legal proceedings against it. Nor has SCI alleged that National Trust at any point indicated that should a lawsuit be filed in the future that National Trust refused to consider the content of the lawsuit and the applicability of the insurance contract to any potential claims. Accordingly, it cannot be said that National Trust either anticipatorily or actually breached the duty to defend SCI.

### 2. Duty to Indemnify

National Trust next states that SCI's claim that National Trust breached its duty to indemnify should be dismissed because SCI voluntarily assumed the expense of repairing the pool, and the CGL policy does not provide for reimbursement of SCI's out of pocket expenses. The insurance contract obligates National Trust to indemnify SCI for "sums that [SCI] becomes legally obligated to pay." (Doc. 1-1, p. 27). The parties disagree about what "legally

obligated" means and when legal responsibility attaches. The Court need not resolve what the phrase means in the context of this case because the Court finds that under the plain language of the contract there is no coverage for the loss SCI sustained as a result of the negligence of Aqua Designs, a subcontractor.

"Where the language of a contract is plain and unambiguous, . . . no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." Richard Bowers & Co. v. Creel, 280 Ga. App. 199, 200-201 (2006); see also Taylor Morrison Services, Inc., 293 Ga. at 459 ("when the provisions of an insurance policy are clear and unambiguous, we attribute to those provisions their clear meaning"). The contract language here is unambiguous and not subject to multiple interpretations.

The CGL policy contains a comprehensive list of exclusions and conditions under which the policy does and does not apply. Under exclusion "l" the policy does not provide coverage for "'property damage' to 'your work.'" (Doc. 1-1, p. 31). This exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Id.). While at first blush, this language appears to support SCI's claim that the insurance policy encompasses damage caused to the pool project by Aqua Designs' faulty installation of the pool, this contractual term cannot be read in isolation from the remainder of the contract. The General Liability Advantage Endorsement

modifies the terms of the policy. "'Under the general rule of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive.'" Lay Bros., Inc. v. Golden Pantry Food Stores, Inc., 273 Ga. App. 870, 872-73 (2005) (citing Broome v. Allstate Ins. Co., 144 Ga. App. 318, 319 (1977)).

Coverage Section G: Contractors Errors and Omissions changes the insuring agreement as follows:

> If you are a "contractor", we will pay those sums that you become legally obligated to pay as damages because of "property damage" to "your product", "your work" or "impaired property", due to faulty workmanship, material or design, or products including consequential loss, to which this insurance applies. The damages must have resulted from your negligent act, error or omission while acting in your business capacity as a contractor or subcontractor or from a defect in material or a product sold or installed by you while acting in this capacity.

(Doc. 1-2, p. 3). The policy then very specifically exempts from coverage "[a]ny liability for 'property damage' to 'your work' if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Doc. 1-2, p. 4).

SCI consistently has denied responsibility for the damage to the pool, instead pointing to Aqua Designs as the negligent party. In the Complaint, SCI explains that the damage to the pool resulted from Aqua Designs' variance from the design plan and omission of essential parts. The Complaint contains no allegations that SCI contributed in any way to the ultimate loss of the pool project. Because the loss resulted from work performed by a subcontractor and

not SCI, by the plain terms of the contract SCI's claim that National Trust breached the duty to indemnify must fail as a matter of law.

### B. Bad Faith

In the absence of a valid breach of contract claim, SCI's cause of action for bad faith likewise must fail. Under O.C.G.A. § 33-4-6, an insurance company that refuses in bad faith to pay for a loss covered by an insurance policy after the insured has made a valid demand for payment shall be liable both for the loss plus a penalty of up to 50% of the loss and reasonable attorney's fees. As discussed above, the CGL policy by its express terms does not cover the loss allegedly sustained by SCI as a result of a subcontractor's negligence. Accordingly, it cannot be said that National Trust denied coverage of the claim in bad faith. SCI's bad faith claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 3) is granted.

**SO ORDERED**, this 26th day of September, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks